[Crim. No. 455.   Fourth Appellate District.—June 17, 1940.]

THE PEOPLE, Respondent, v. WAYNE NORWOOD, Appellant.

Newton F. Rozzelle, Jr., for Appellant.

Earl Warren, Attorney-General, and John L. Nourse, Deputy Attorney-General, for Respondent.

MARKS, J.—This is an appeal from a judgment finding defendant guilty of robbery in the first degree, and from an order denying his motion for new trial.

Defendant was charged with robbing Paul Martinowsky of $70.58 in San Diego on February 5, 1940.   He was charged with having suffered two prior convictions and that he had been confined in the penitentiary on one of them.   He admitted the prior convictions and pleaded not guilty to the charge.

Defendant did not deny the fact of the robbery.   He relied on the defense of voluntary intoxication to an extent that he was unable to have had an intent to steal.

The trial court excluded much of defendant's evidence on the question of intoxication and refused to give his requested instructions on the subject. This was held to be reversible error under the facts disclosed in the case of *People* v. *Crowl*, 28 Cal. App. (2d) 299 [82 Pac. (2d) 507].

There is little conflict in the evidence. Defendant and Daniel Dillon committed the robbery. They were arrested shortly after the commission of the crime. The next day, when defendant was seemingly in possession of his faculties, they made statements to the San Diego police which were taken down by a reporter and which were read in evidence. Defendant does not question the correctness of the reporter's notes nor of his transcription of them. A number of the facts which we will summarize will be taken from these statements.

Dillon and defendant had been acquainted for about ten years. They spent the larger part of February 5, 1940, repairing defendant's automobile. They drank whiskey during the day. We quote the following from Dillon's statement made in the presence of defendant: "I don't know, I believe I suggested that we rob this filling station. . . . The filling station on Highland and El Cajon. We decided that we would have to steal a car. We walked down here, I can't tell you to what street it was; Mr. Norwood went down by a house and I stood on the street and he came out and motioned to me to come in and we got into this car and drove away. . . . We drove out El Cajon and drove around considerable. We drove by this place two or three times and once we drove in and didn't stop. Then we drove around some more and came back and parked on Highland Avenue right by the side of it and we got out and went to the back of the station. This attendant started across to the toilet and Mr. Norwood hit him with his fist and knocked him down and I went in and opened the cash register and took the money. We got in the car and drove around the block and ran the car into the back end of a parked car and then we left the car and walked down Fairmont Avenue to University and took the street car to Park Boulevard."

The following appears in the statement made by defendant: "Q. Now you have just heard the statement made by Dillon, what have you got to say in regard to this statement? A. By and large, I think it is a true statement of fact with possibly the exception I think the word 'get a car' was most likely

used than 'stealing a car', because I had driven this car several times before with permission. Q. Norwood, it is true then that you and Dillon had planned this service station robbery before you went out in that neighborhood? A. I think so. I am very vague about the whole thing as far as the names of the streets that Mr. Dillon remembers. I know the streets in my ordinary state but I was so much in a muddle that I couldn't have remembered. If the man hadn't said where the station was this morning, I couldn't have driven back to it. Q. Then Norwood, I will ask you this question, do you remember having been at the oil station on El Cajon and Highland Avenue last night in company with Dillon? . . . A. Do I remember that, I do. Q. And while in this service station, you remember striking the attendant and knocking him down? A. You are coming to the place where I want to talk to my wife—the answer is no."

In his testimony defendant admitted that Dillon had proposed robbing the service station; that they obtained another's car and went to the service station; that the two went into the service station; that another car drove in; that the two left; that shortly thereafter he had no recollection of his actions or anything that happened between that time and the time he woke up in jail the next day.

It is thoroughly established that Dillon and defendant formed the specific intent to rob the service station of what money there was on hand; that while defendant was sufficiently conscious to still act on this intent they immediately made preparations for the robbery and went to the scene of the crime; that they robbed the service station and stole the money in the cash register.

The specific intent to commit the crime was admitted by defendant. The crime was actually committed in carrying out that specific intent without delay between forming the intent and acting on it. Because he lost possession of his faculties during the actual commission of the crime, if true, cannot relieve defendant from the result of his criminal intent and criminal act. The act was an immediate result of the intent, and the intent, being admitted, continued to control the act. (See *People* v. *Price*, 207 Cal. 131 [277 Pac. 316].) It follows that defendant's voluntary intoxication that caused him to lose consciousness after the intent was formed and acted on and during the commission of the crime, can furnish him

no legal defense here. That the specific intent was formed and immediately acted on is sufficient. Under the facts before us he was not prejudiced by the questioned rulings of the trial court.

The judgment and order are affirmed.

Barnard, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 1, 1940.