[Crim. No. 3298.   First Dist., Div. One.   Apr. 3, 1957.]

THE PEOPLE, Respondent, v. THOMAS McPHILLIPS, Appellant.

Thomas McPhillips, in pro. per., and E. John Kleines, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

BRAY, J.—Defendant appeals from a judgment of conviction, after jury trial upon the charge of felony, robbery, and from an order denying new trial.

### QUESTIONS PRESENTED

1. Sufficiency of the evidence.
2. Alleged error in failure to instruct on intent.

### RECORD

Defendant was charged with violation of Penal Code, section 211, robbery of Jack Edwards, plus a prior felony conviction which he admitted. On his motion, another information charging him with grand theft was consolidated for trial. The jury found him guilty of the robbery charge. By stipulation the degree was fixed as second degree. The jury could not agree on the grand theft charge and it was dismissed on motion of the district attorney.

### 1. *Sufficiency of the Evidence.*

While, as usually occurs in criminal cases, there are conflicts and contradictions in the evidence, such contradictions were matters for the jury to consider, and were not such which this court could resolve as matters of law. Nor is the testimony of Miller, as will hereafter be seen, such that we can hold it to be incredible. The evidence amply supports the conviction.

Jack Edwards, the victim, aged 75, resided at the Alta Hotel in San Francisco. He testified that in the lobby that evening, he was engaged in conversation with four or five others. Defendant was present. Edwards had not known him prior to that occasion. About 1 a. m. Edwards decided to retire. Defendant had led Edwards to believe that defendant was also staying at the hotel. Defendant accompanied Edwards in the elevator to his room. Defendant forced himself into the room, Edwards protesting that he needed sleep. Defendant beat Edwards unconscious. Edwards had in his possession a $20 bill, four $5.00 bills and some silver, all of which defendant took. One of the $5.00 bills had a torn

corner. Edwards identified it as one of the bills later found in defendant's possession.

Miller, clerk at the hotel, said that a little after 2 a. m. he saw Edwards crossing the street toward the hotel from a restaurant on the other side of the street. Defendant was walking behind Edwards. They both walked to the elevator where they held a conversation before entering. Miller heard defendant say he was going to the top floor. As there was a hotel rule against visitors after 10 p. m., Miller decided to follow. He went up in the freight elevator. Seeing no one on the top floor, he then went to the third floor. (There was some confusion in his testimony as to whether he then went to the fifth or third floor. He finally said positively it was the third.) He listened at all the doors on that floor. At Edwards' room he heard a thump and then heard Edwards say "God, don't hit me no more." Miller went down to the desk and obtained a flashlight and a billy. He instructed an assistant to call the police. Returning to the third floor he saw defendant come out of Edwards' room and go down in the passenger elevator. Miller descended in the freight elevator. When Miller reached the lobby defendant was outside the hotel. Defendant ran into an alley. Miller watched defendant until the police arrived and was present at the arrest. Officer Ryan apprehended defendant, who, on seeing the police, shoved something inside his pants. On search this proved to be the wallet of one Plumley. Additionally defendant had $65. One $5.00 bill was the torn one later identified by Edwards. Ryan stated that Edwards said in defendant's presence shortly after defendant's arrest that defendant was not the man who robbed him. Edwards then appeared "very groggy" and showed evidence of a severe beating in the head. (Edwards had no recollection of this statement. He could not recall anything that occurred after his beating.)

Plumley met defendant in a tavern about 1 a. m. They discussed sports. Plumley went to the men's room and as he was leaving it defendant entered. They bumped. Plumley returned to the bar and shortly defendant left the tavern. On reaching into his overcoat pocket Plumley discovered that his wallet was gone. It was the one Officer Ryan found in defendant's trousers.

Defendant testified that he came to San Francisco from Sacramento that day and that in the tavern he started to talk to Plumley. He was not sure whether or not he bumped against Plumley on entering the rest room. He returned to

the bar. As he was leaving he saw a wallet on the floor which he picked up and put in his pocket. He then went to a Mexican restaurant. After approximately 30 minutes there he left, intending to look for a room. Standing on the corner he saw two police cars approaching. Feeling guilty about the possession of the wallet he walked in the opposite direction and tried to hide the wallet. He had over $50 in his possession before he found the wallet. It contained $15. (Plumley said $17.)

Defendant denied being in the Alta Hotel, in the alley which Miller said he went through, or beating or robbing Edwards.

Inspector Dutil testified that shortly after his arrest defendant told him that he had found the wallet on the street.

In spite of discrepancies in the time that Miller and Edwards stated that the affair took place, whether defendant first met Edwards in the lobby, the fact that Edwards in his dazed condition said defendant was not the person who robbed him (at the trial Edwards was positive in his identification of defendant), and some other apparent contradictions, there is ample evidence to support the jury's finding that all of the elements of robbery were present. Defendant contends that there is no evidence as to when he formed the intent to rob. Considering defendant's conduct that night, his pretending that he had a room in the Alta Hotel, his following Edwards to his room and forcing himself into the room, his unmerciful beating of Edwards (there could have been no other motive than robbery for beating him), his taking Edwards' money, and no testimony by defendant that he formed the intent to rob only after the beating,* compels the conclusion that defendant intended by force to rob Edwards.

2. *Instructions—Intent.*

Defendant offered no instruction on intent, but contends that the court is required on its own motion to instruct upon the subject. The court read section 211, Penal Code, defining robbery. In *People* v. *Quinn,* 77 Cal.App.2d 734 [176 P.2d 404], it was urged that it was the duty of the trial court to give such an instruction even though none was offered by defendant, particularly as there the defense was that the

---

*Thus distinguishing this case from *People* v. *Carnine,* 41 Cal.2d 384 [260 P.2d 16], where the defendant in a homicide case testified that it was not until after the killing that he formed the intent to rob the deceased.

taking of a wallet was a practical joke. The court said (p. 739) : "The jury was otherwise instructed that to constitute robbery there must be a felonious taking of personal property from the person of another, and that instruction necessarily included the question of intent.

"While it may be conceded that an instruction should have been given to the effect that in constituting a crime there must exist a union or joint operation of act and intent, it can not be held that any possible error was sufficiently prejudicial to justify a reversal in view of the provisions of section $4\frac{1}{2}$ of article VI of the Constitution."

So here, assuming that such an instruction should have been given, the failure to do so could not possibly have been prejudicial. Defendant's actions that night permit of no conclusion other than that he intended to and did rob Edwards by use of force.

Judgment and order affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.