[Crim. No. 8083. Second Dist., Div. Three. Feb. 20, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. HERBERT M. STONE, Defendant and Appellant.

Lionel Richman, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Plaintiff and Respondent.

FILES, J.—Appellant and Bobby Gaddis were accused in count I of armed robbery (Pen. Code, § 211), and in count II of the murder of one John Lary (Pen. Code, § 187). They pleaded not guilty. (Appellant also put in a plea of not guilty by reason of insanity but withdrew it before trial.) Because of a conflict of interest, appellant was represented at the trial by separate counsel appointed under Penal Code, section 987a.

After a 10-day trial the jury returned verdicts finding that: appellant and defendant Gaddis were guilty of first degree robbery as charged in count I; that appellant, and not Gaddis, was armed at the time of the robbery; and that appellant was guilty of murder of the first degree as charged in count II. On the latter count defendant Gaddis was acquitted. Following the trial of penalty the jury, unable to agree, was discharged and with the consent of both parties the court sentenced appellant to imprisonment for the term prescribed by law. Appellant appealed from the judgment, and his request for the appointment of counsel was granted by this court.

Appellant does not challenge the sufficiency of the evi-

dence, but contends that the trial court committed various errors in the instructions and in the admission of certain evidence; and that these errors worked a miscarriage of justice warranting a new trial. As the importance of any irregularity in trial court procedure may depend upon the closeness of the evidence, we thus consider the state of the evidence before evaluating the errors claimed.

The scene of the robbery was a food market in the City of Hawthorne in Los Angeles County. The record contains the testimony of six percipient witnesses who testified, without substantial conflict, as to the events relevant to this appeal. Their testimony showed the following: The Felton Market closes at 7 p.m. On December 16, 1960, shortly after Lloyd Hill, an employee, had closed the doors for the day, the only remaining customers, two men, approached the check stand with their grocery cart. At the check stand was Mrs. Tanowitz, wife of one of the proprietors of the market, who testified that one of the men left the cart, stopped near the register, pulled out a gun and said: "This is a stick-up. Open the register. Don't make any noise, and get into the cooler." Both she and Hill identified this man as the appellant; she identified Gaddis as his companion. She and Hill were placed together in a glass-windowed cooler where beverages are kept for sale and storage. From the cooler they could see the check stands and the front of the store. Appellant then went to the meat processing room where Philip Tanowitz was working. With his gun drawn, appellant told Mr. Tanowitz: "Drop your wallet." "Get in the cooler." He, too, obliged, and after being placed in the cooler saw defendant Gaddis with his hands in one of the cash registers. Appellant then returned to the front of the market and in response to persistent rapping on the entrance door, opened it. A man and a teen-age boy entered. The former testified that a man, whom he and the boy both identified as appellant, with drawn gun told him to give him his wallet and to take off his jacket. He noticed that another man was taking money from one of the cash registers and putting it into a sack. He testified that he and his companion then entered the cooler on appellant's order. At this point another lad, Michael Lydon, knocked on the locked front entrance, was admitted by a man with a gun. He too identified appellant as this man. He testified that appellant said, "Get in the freezer," to which he replied, "Are you talking to me?" Appellant then said: "Don't get smart. Just turn around

and walk to the freezer." Meantime, while appellant was preoccupied at the front entrance with these latecomers, Mr. Tanowitz left the cooler and exited the market through a rear door in quest of help. Appellant, encountering difficulty in getting one of the cash registers open, returned to the cooler and ordered Hill to open it for him. John Lary, a nearby resident and reserve game warden who had been summoned by Mr. Tanowitz, entered through the rear door of the market carrying a gun. Several shots were fired. Appellant was seen firing toward the rear. Mr. Lary was killed. Appellant and Gaddis, with about $800 in cash, then fled.

Defendant Gaddis testified that he met appellant for the first time at about 6:15 p.m. on the evening of the robbery. During the next half hour or so he witnessed appellant drinking. Shortly before 7 p.m. he, appellant and Hughes in a car driven by appellant went to the Felton Market. He was unaware of their robbery plans until just prior to their arrival at the market. He testified that he participated in the robbery out of fear of appellant; that appellant was armed but he was not; and that while in the market appellant and the deceased were firing their guns. After the gun battle appellant came over to him and said, "Let's go, get out of here." Appellant, using the keys in the front door, opened it and they drove away in a car parked outside. Soon thereafter, at appellant's residence and at appellant's direction, they divided the money taken from the market.

At the trial on the issue of guilt appellant neither testified nor offered any evidence in his behalf. He took the stand, however, at the penalty trial, admitted his participation in the robbery, admitted that he fired "about two shots," but claimed that defendant Gaddis also fired, that Gaddis planned the robbery, and that he was intoxicated at the time.

With this factual background we turn to the claimed errors committed in the instructions given by the trial court.

First, appellant contends that the trial court neglected to fully instruct the jury as to all the elements making up the crime of robbery. The record shows that the parties requested and the court gave an instruction that: "Robbery is the felonious taking of personal property of any value in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." The court failed to further inform the jury that implicit in this instruction is the requirement of a specific

intent to steal—to permanently deprive the owner of his property.

At the trial appellant made no request that the court instruct the jury further with respect to specific intent. However, even in the absence of such a request it is error to omit such an instruction in a case where defendant's intent to steal is not beyond question. (*People* v. *Sanchez,* 35 Cal. 2d 522, 526, 528 [219 P.2d 9]; *People* v. *Garcia,* 169 Cal. App.2d 368 [337 P.2d 100].)

In the case at bench the testimony regarding appellant's conduct prior to, during, and immediately after the robbery leaves no doubt whatever as to appellant's state of mind. No rational person could infer from the evidence that appellant did not intend to commit a robbery when he entered the grocery store, drew a gun, herded the witnesses into the cooler, took their wallets and looted the cash register. Where the evidence permits of no other interpretation of the defendant's conduct, failure to give further instruction on specific intent is not prejudicial. (*People* v. *Seay,* 179 Cal.App.2d 362 [3 Cal.Rptr. 769]; *People* v. *McPhillips,* 149 Cal.App.2d 687 [308 P.2d 929]; *People* v. *Norwood,* 39 Cal. App.2d 503 [103 P.2d 618].) Accordingly, cases like *People* v. *Sanchez, supra,* and *People* v. *Garcia, supra,* where the circumstances of the crime and the facts indicating intoxication combined to raise a reasonable doubt as to whether the defendants in those cases entertained the requisite intent, are distinguishable.

Nor are we persuaded by appellant's suggestion that we hasten to find prejudice from any error found to have been committed because of the inconsistency in the jury's verdicts. It is undeniable that the jury has made an improper discrimination because, under the law, if Gaddis was guilty of robbery, he was also legally responsible for the resulting murder. (*People* v. *Martin,* 12 Cal.2d 466, 472 [85 P.2d 880].) In *People* v. *Angelopoulos,* 30 Cal.App.2d 538 [86 P.2d 873], a jury acquitted two defendants who were charged with burning property to defraud an insurance company, but convicted the third defendant who was alleged to have hired the job done. The conviction was reversed because the verdicts were "inconsistent and irreconcilable." In other cases not involving a principal and agent relationship, inconsistency has been held not to be a ground for reversal. "The fact that certain defendants may escape conviction for their crimes is not any legal or logical reason why another defendant, where

substantial evidence has been introduced to sustain his conviction, should be exonerated and be permitted to escape punishment for his crime." (*People* v. *Taylor*, 88 Cal. App.2d 983, 987 [199 P.2d 751].) Accord: *People* v. *Guttierrez*, 207 Cal.App.2d 529, 531 [24 Cal.Rptr. 441]; *People* v. *Smith*, 204 Cal.App.2d 797, 803 [23 Cal.Rptr. 5]; *People* v. *Massie*, 122 Cal.App.2d 235 [264 P.2d 671].)

Since the jury found both defendants guilty of robbery, the verdict leaves no doubt that the jury believed that these defendants committed the acts constituting both offenses. Gaddis' own testimony convicts him of both robbery and murder, since the jury rejected his story that his participation was coerced. The form of the verdict is adequately explained by the jury's understandable reluctance to fasten a murder conviction upon the man who did not fire the shot and who never contemplated a killing. The discrimination was against the law, not against appellant.

■ Secondly, appellant contends that the trial judge erred in giving to the jury a complete set of form instructions concerning murder. These instructions informed the jury that murder is the killing of a human being with malice aforethought, defined in the language of Penal Code, section 188; that murder which is willful, deliberate and premeditated or which is committed in the perpetration or attempted perpetration of arson, rape, robbery, burglary, or mayhem or any act punishable under section 288 of the Penal Code is murder of the first degree, and all other kinds of murder are of the second degree; that although there are two degrees of murder, the evidence here is such that either the defendants are innocent of the charge of murder or are guilty of murder in the first degree; and, finally, that murder committed in the perpetration of the above enumerated crimes is murder of the first degree irrespective of whether it was intentional, unintentional, or accidental.

Appellant does not claim that these instructions are not proper statements of the law, but argues that it was unnecessary and therefore misleading to instruct the jury regarding malice aforethought or to mention such crimes as arson, mayhem, rape, etc., where the undisputed evidence shows they were not involved.

We fail to see how this surplusage could have been misleading in the context of this case. If the jury believed that appellant was the gunman who entered the grocery store on

the evening of December 16, 1960, it could not rationally have reached any verdict on the murder count except guilty.

Finally, it is contended that the court erred in admitting into evidence a pistol because there was no positive identification that it was the murder weapon. That there was no such positive identification is true; but since the gun was admissible to illustrate to the jury the kind and appearance of the weapon employed by appellant, positive identification of it as the murder pistol was not required. The testimony in the record that appellant was seen in the market with a drawn pistol and that the exhibit "looked like" that pistol was adequate foundation. (*People* v. *Brown,* 49 Cal.2d 577, 587 [320 P.2d 5].)

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied March 20, 1963, and appellant's petition for a hearing by the Supreme Court was denied April 17, 1963. Peters, J., was of the opinion that the petition should be granted.