[No. B014881. Second Dist., Div. Four. July 17, 1986.*]

THE PEOPLE, Plaintiff and Respondent, v.
GUADALUPE FUENTES, Defendant and Appellant.

*Review granted November 13, 1986. Review dismissed and opinion ordered published June 3, 1987.

**COUNSEL**

Donn A. Dimichele, under appointment by the Court of Appeal, and Ball, Hunt, Hart, Brown & Baerwitz for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John R. Gorey and Cindy M. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS, P. J.**—In this appeal of a conviction for assault with a firearm, appellant Guadalupe Fuentes contends that (1) the doctrine of collateral estoppel bars his conviction on enhancements for great bodily injury and firearms use; (2) there is insufficient evidence to sustain his conviction; (3) the trial court committed reversible error in rejecting his requested instruction on circumstantial evidence; and (4) the trial court failed to apply mitigating factors at sentencing. We find merit in appellant's instructional issue, and therefore reverse.

Count I of the information charged appellant with assault with a firearm (Pen. Code, § 245, subd. (a)(2)[1]) upon Jose Castrellon. Count II charged him with assault with a firearm (§ 245, subd. (a)(2)) upon Simon Zuniga-Garcia. Count III charged him with shooting at an inhabited dwelling (§ 246).

The information also contained enhancement allegations of personal use of a firearm (§ 12022.5) as to all counts, personal infliction of great bodily injury (§ 12022.7) as to count II, and principal armed with a firearm (§ 12022, subd. (a)) as to count III.

After lengthy deliberations, the jury found appellant guilty on count I of the lesser included offense of drawing or exhibiting a firearm (§ 417, subd. (a)(2)). On count II, it found him guilty as charged of violating section 245,

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

subdivision (a)(2), further finding true the firearms use and great bodily injury allegations. No finding was returned on count III, and it was dismissed on the People's motion.

Appellant was sentenced to prison for the middle term of three years on count II, plus three years for the great bodily injury enhancement, for a total of six years. The use enhancement on that count was stricken on the court's motion. A few days after the sentencing hearing, the court dismissed the misdemeanor in count I nunc pro tunc. A timely notice of appeal was filed.

The evidence showed that appellant and his brother Gregorio were the occupants of a car which was involved in two shooting incidents in Pacoima around 6 p.m. on July 1, 1984. The central issue in both incidents was which one drove the car and which one fired the gun from the passenger seat.

1. *The Castrellon Incident (counts I and III)*

Jose Castrellon, his wife Vicenta, and his brother-in-law Magdellano Tovar were in the front yard of the Castrellon home when a blue Ford Maverick made a U-turn in front of them. A man was driving and a woman was in the passenger seat. The occupants of the Maverick picked up two people at a bus stop and made another turn, causing dirt and rocks to spray onto the Castrellon group. Mr. Castrellon complained to the driver, who swore back at him. Mr. Castrellon threw a rock at the car. The car drove away.

The car returned 10 or 15 minutes later with one or two men and a woman inside. One of them pointed at Mr. Castrellon. He went inside the house and loaded his rifle.

Ten or fifteen minutes later, the car returned for the third time. Mr. Castrellon, Mr. Tovar, and Mr. Castrellon's son Jaime were outside; Mrs. Castrellon had gone inside the house. There were now two men in the car, both wearing white T-shirts. A rifle barrel protruded from the passenger window. The passenger fired once into the air; Mr. Castrellon shot three times at the car; the passenger fired two more times into the air; and the car left.

Mr. Castrellon positively identified Gregorio as the driver and appellant as the shooter. A discrepancy appeared in the police report, which had conflicting language in two different places over which man was in which position. The investigating officer testified that the version which placed Gregorio in the driver's seat was correct and the other version resulted from

a typing error. Mr. Castrellon also experienced some confusion over who was in the car the second time it came by. He was sure Gregorio was the driver the first time he saw him but did not say Gregorio was the driver on the second occasion until the prosecutor showed him his preliminary hearing testimony. He was further confused over whether the people in the car the second time were the same as the first time. However, he was positive that Gregorio was the driver and appellant the shooter the third time the car came to the house.

Mr. Castrellon's son Jaime definitely identified Gregorio as the driver on the second and third occasions and appellant as the passenger/shooter on the third occasion.

In contrast, Mr. Tovar testified that the driver was the same person all three times and that he saw the driver in the courtroom. While neither side asked Mr. Tovar to point to appellant, he was apparently referring to appellant, as Gregorio was not in the courtroom.

Gregorio and appellant maintained that appellant was the driver and Gregorio the shooter:

Gregorio testified that he was driving by the Castrellon home with his wife when he became involved in a dispute with the people there. After a man hit the car with a rock, Gregorio left, picked up appellant, and went home. He got a rifle at the house and hid it in the car without telling appellant about it. He and appellant then left in the car to go to the store. When they were near the Castrellon home, they changed places so appellant could drive, as the car was malfunctioning and Gregorio was a little drunk. A man fired a pistol at the car so Gregorio brought out the gun and fired shots into the air. They then drove away.

On cross-examination, Gregorio indicated that he was driving and appellant was the passenger the second time the car passed by the house, but they changed places and appellant was driving the third time they passed, when Gregorio fired from the car.

The defense also introduced Gregorio's statements to the police investigating officer and the probation intake officer at juvenile hall, in which he said he was the shooter. Although appellant did not testify, the defense put into evidence his statement to the police, in which he gave the same version of the Castrellon incident.

## 2. *The Zuniga-Garcia Incident (count III)*

A short time after the Castrellon incident, Simon Zuniga-Garcia was driving by when he saw a blue Ford Maverick stopped in the road, blocking

traffic. There were two men in the car. Mr. Zuniga-Garcia honked his horn and went around the car. The man in the passenger seat fired once at him, wounding him in the left side of the stomach. Surgery was necessary to remove the bullet. The police later found the blue Ford Maverick about a block away. A rifle and ammunition were inside its trunk. The car belonged to Gregorio.

No fingerprints were obtained from the rifle. A gunshot residue examination performed on appellant and Gregorio was negative. Gregorio's fingerprints were on a beer bottle in the car.

Mr. Zuniga-Garcia was unable to identify the occupants of the car. He told the police at the hospital just after the shooting that the shooter was an 18- to 20-year-old male Hispanic.

Gregorio, called by the defense, testified that after he and appellant drove away from the Castrellon home, the car broke down completely. When another car passed them, Gregorio shot at it because he thought it came from the Castrellon home. Gregorio told a police officer and probation officer that he did the shooting, and appellant confirmed that version in his statement to the police.

It was stipulated at trial that Gregorio had been charged with and pleaded guilty to assault with a deadly weapon and personal firearms use on counts I and II. He had also pleaded nolo contendere to the great bodily injury allegation on count II. A transcript of the plea which was admitted into evidence contained an admission by Gregorio that he was the shooter in both incidents. The jury also learned that appellant was 28 or 29 while Gregorio was 17 or 18 at the time of the shooting. Gregorio was sentenced to the California Youth Authority.

I

Both the enhancement for firearms use in section 12022.5 and the enhancement for infliction of great bodily injury in section 12022.7 apply only to a defendant who personally uses the firearm and personally inflicts the injury. (*People* v. *Cole* (1982) 31 Cal.3d 568, 579 [183 Cal.Rptr. 350, 645 P.2d 1182].) Appellant contends that the doctrine of collateral estoppel bars his conviction for those enhancements since his brother, Gregorio, had previously admitted them as part of his guilty plea. The facts show that only one person could have been the shooter.

"Collateral estoppel precludes a party to an action from relitigating in a second proceeding matters litigated and determined in a prior proceeding.

[Citations.] Traditionally, the doctrine has been applied to give conclusive effect in a collateral court action to a final adjudication made by a court in a prior proceeding." (*People* v. *Sims* (1982) 32 Cal.3d 468, 477, fn. omitted [186 Cal.Rptr. 77, 651 P.2d 321]; 1 Witkin, Cal. Crimes (1985 supp.) Defenses, § 221, p. 215.)

"The cases in which the doctrine of collateral estoppel has been applied fall generally into two closely analogous categories: (1) where some element of the crime must necessarily be imputed to the defendant from an acquitted codefendant; and (2) where it would be legally impossible for the particular defendant to have committed the act charged unless his previously acquitted coconspirator were also guilty." (*People* v. *Mata* (1978) 85 Cal.App.3d 233, 237-238 [149 Cal.Rptr. 327].) Appellant here asks us to extend the doctrine to a previous *conviction* upon a guilty plea. Appellant relies chiefly upon *People* v. *Taylor* (1974) 12 Cal.3d 686 [117 Cal.Rptr. 70, 527 P.2d 622].

The defendant in *Taylor* waited in the getaway car while his two confederates went in to rob a liquor store. One of the confederates was killed by the liquor store operators during the robbery. The surviving confederate was separately tried and convicted of robbery but acquitted of murder as the People failed to establish sufficient provocative conduct to show malice. In contrast, the defendant was convicted both of robbery and murder. The Supreme Court reversed the murder conviction by applying the doctrine of collateral estoppel.

*Taylor* established a three-pronged test for collateral estoppel: "Collateral estoppel has been held to bar relitigation of an issue decided at a previous trial if (1) the issue necessarily decided at the previous trial is identical to the one which is sought to be relitigated; if (2) the previous trial resulted in a final judgment on the merits; and if (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior trial. [Citations.]" (12 Cal.3d at p. 691.)

The *Taylor* opinion quickly resolved that the first two prongs of its test were present, since the identical issue of malice was involved in both proceedings and the surviving confederate's acquittal constituted a final judgment. (12 Cal.3d at pp. 691-692.) The problem with the third prong was that some courts had declined to apply collateral estoppel where the same criminal defendant had not been involved in the prior trial. Following an exhaustive review of pertinent case law, *Taylor* identified the following policy considerations underlying application of the doctrine: "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and

(3) to provide repose by preventing a person from being harassed by vexatious litigation. [Citation.]'' (At p. 695.) Of those reasons, ''the most compelling . . . where vicarious liability is at issue is to prevent the compromising of the integrity of the judicial system caused by the rendering of inconsistent verdicts.'' (At pp. 695-696.) The opinion went on to ''conclude that the lack of identity of parties defendant does not preclude the application of the doctrine of collateral estoppel . . . .'' (At p. 698.) However, that holding was specifically limited ''to the particular circumstances of the instant case where an accused's guilt must be predicated on his vicarious liability for the acts of a previously acquited [*sic*] confederate.'' (*Ibid.*)

While *Taylor* provides guidance on the elements and policy considerations of collateral estoppel, it does not compel application of the doctrine here. Under our facts, there is neither vicarious liability nor a previous acquittal.

For similar reasons, *People* v. *Superior Court (Jackson)* (1975) 44 Cal.App.3d 494 [118 Cal.Rptr. 702], is not controlling here. *Jackson* applied *Taylor* in holding that collateral estoppel precluded conviction of one conspirator when the remaining coconspirators had been acquitted at a separate trial. The effect of a prior conviction upon a guilty plea presents a different problem.

*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 605 [25 Cal.Rptr. 559, 375 P.2d 439], contains dictum which is much more relevant to our situation. In *Teitelbaum*, the plaintiff corporations were the alter ego of the corporate president, who had been convicted in criminal proceedings of theft and filing a fraudulent insurance claim. The plaintiff corporations sued the defendant insurers to recover for the same loss which had been involved in the criminal proceedings. *Teitelbaum* held that collateral estoppel defeated the plaintiffs' action, since the jury's verdict against the corporate president necessarily found against the plaintiffs on the issue of how the loss occurred.

Although *Teitelbaum* was concerned with the effect of a prior jury trial, the court made this important statement about the effect of a prior guilty plea: ''A plea of guilty is admissible in a subsequent civil action on the independent ground that it is an admission. It would not serve the policy underlying collateral estoppel, however, to make such a plea conclusive. 'The rule is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy.' [Citation.] 'This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case.' [Citation.] When a plea of guilty has been entered in the prior action, no issues have been 'drawn into

controversy' by a 'full presentation' of the case. It may reflect only a compromise or a belief that paying a fine is more advantageous than litigation. Considerations of fairness to civil litigants and regard for the expeditious administration of criminal justice [citation] combine to prohibit the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, seeks for the first time to litigate his cause in a civil action." (58 Cal.2d at pp. 605-606.)

The *Teitelbaum* dictum was applied to the situation of two successive criminal proceedings in *People* v. *Camp* (1970) 10 Cal.App.3d 651 [89 Cal.Rptr. 242]. The defendant in *Camp* had pleaded guilty in earlier proceedings to failing to provide for a child. When he was again charged with that offense the trial court ruled that collateral estoppel barred presentation of evidence on the issue of paternity. Relying upon the policy considerations enunciated in the *Teitelbaum* dictum, *Camp* reversed the judgment, holding that collateral estoppel could not be premised upon a judgment of conviction which was based on a guilty plea. (*People* v. *Camp, supra,* at p. 654.)

While neither *Teitelbaum* nor *Camp* involved a situation where the prior guilty plea was by a different defendant, we are convinced that the same policy considerations preclude application of collateral estoppel here.

We do not know why Gregorio admitted the enhancements rather than contesting them at trial. It may be that he actually was the shooter, as he consistently stated. On the other hand, it is significant that the jury which heard all the evidence and watched Gregorio testify did not find Gregorio's version to be credible. Gregorio may have chosen to plead to everything because he was 10 years younger than his brother and believed (rightly) that he was likely to receive a lighter sentence. He may also have elected to take the brunt of the charges because he involved appellant in a problem which was not of appellant's making. Whatever Gregorio's motivation for the guilty plea, it meant that the issue of the shooter's identity was not fully litigated until appellant's trial. We therefore decline to give collateral estoppel effect to the plea.

In attempting to avoid application of *Camp* and the *Teitelbaum* dictum, appellant stresses the *Taylor* policy consideration of avoiding inconsistent judgments which undermine the integrity of the judicial system. We recognize the seeming incongruity of imposing firearms use and great bodily injury enhancements on two defendants when factually only one of them can have been the shooter. However, inconsistent verdicts are not unknown in the criminal law. (See, e.g., *People* v. *Mata, supra,* 85 Cal.App.3d at p. 237; *People* v. *Scoglio* (1969) 3 Cal.App.3d 1, 4-5 [82 Cal.Rptr. 869]; *People* v. *Stone* (1963) 213 Cal.App.2d 260, 264-265 [28 Cal.Rptr. 522];

*People* v. *Gutierrez* (1962) 207 Cal.App.2d 529 [24 Cal.Rptr. 441]; Note, *Collateral Estoppel in Felony-Homicide Cases* (1976) 64 Cal.L.Rev. 417, 429-430.) Because Gregorio's conviction was based on a guilty plea, we see far less risk of exposing the criminal justice system to ridicule than would be the case if Gregorio had gone to trial.

Our conclusion is further strengthened by the inapplicability here of the other policy considerations named in *Taylor* for applying collateral estoppel.

Moreover, appellant's attempted analogy to cases discussing the binding effect of agreements necessarily fails, since appellant had no involvement in the agreement between Gregorio and the prosecution. And the rule that "where all evidence affecting defendants jointly charged is the same, a conviction of one defendant cannot be sustained if the other is acquitted" (*People* v. *Nieves* (1969) 2 Cal.App.3d 562, 567 [82 Cal.Rptr. 661], citing *People* v. *Talbot* (1934) 220 Cal.3 [28 P.2d 1057]), does not apply in a separate trial situation (see *People* v. *Allsip* (1969) 268 Cal.App.2d 830, 831 [74 Cal.Rptr. 550]).

We therefore decline to apply collateral estoppel to this case.[2]

## II

We find no merit in appellant's contention that the evidence is insufficient to sustain his conviction. There was substantial evidence to support the finding that, beyond a reasonable doubt, appellant shot Mr. Zuniga-Garcia. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

## III

■ Appellant contends the trial court committed prejudicial error in refusing his request to give CALJIC No. 2.01 (1979 rev.) on circumstantial evidence.

CALJIC No. 2.01 provides: "However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of

---

[2]At trial, appellant's request to introduce into evidence the transcript of Gregorio's sentencing hearing was denied. At the oral argument before this court, the Attorney General asked us to take judicial notice of that transcript, to show that the state attempted to strike the use and great bodily injury allegations which Gregorio had admitted. We deny the request for judicial notice. The trial court did not rely on the transcript below, and it is unnecessary to our determination of the issue.

the crime, but (2) cannot be reconciled with any other rational conclusion.

"Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which such inference necessarily rests must be proved beyond a reasonable doubt.

"Also, if the circumstantial evidence [as to any particular count] is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject that interpretation which points to his guilt.

"If, on the other hand, one interpretation of such evidence appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

Despite defense counsel's insistence that this instruction was required, the trial court believed it was inapplicable. It did give the more general circumstantial evidence instruction, CALJIC No. 2.00 (1979 rev.) which states: "Evidence consists of testimony of witnesses, writings, material objects, or anything presented to the senses and offered to prove the existence or non-existence of a fact.

"Evidence is either direct or circumstantial.

"Direct evidence is evidence that directly proves a fact, without the necessity of an inference, and which by itself, if found to be true, establishes that fact.

"Circumstantial evidence is evidence that, if found to be true, proves a fact from which an inference of the existence of another fact may be drawn.

"An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts established by the evidence.

"It is not necessary that facts be proved by direct evidence. They may be proved also by circumstantial evidence or by a combination of direct evidence and circumstantial evidence. Both direct evidence and circum-

stantial evidence are acceptable as a means of proof. Neither is entitled to any greater weight than the other.''

It is apparent that the prosecution relied on the direct evidence provided by members of the Castrellon family regarding what occurred in that incident.

The evidence on the Zuniga-Garcia incident, however, was quite different. Mr. Zuniga-Garcia gave direct evidence that he was shot by the passenger of the car, but could make no identification. The prosecution's theory that appellant was the shooter rested upon circumstantial evidence. The jury was asked to infer that, because appellant had been identified as the shooter in the passenger seat in the Castrellon incident, he must have been in that position and the shooter in the Zuniga-Garcia incident. Additionally, there were conflicts in the circumstantial evidence in the Zuniga-Garcia incident that appellant was the shooter. Mr. Zuniga-Garcia told the police the shooter was 18 to 20 years old, which was Gregorio's age and not appellant's. The defense presented evidence that it was Gregorio and not appellant who was the shooter.

"Where the evidence is wholly or substantially circumstantial, the court must give a cautionary instruction, on its own motion, to the effect that such evidence must be irreconcilable with the theory of innocence. [Citations.]" (Witkin, Cal. Criminal Procedure (1963) Trial, § 488, p. 494; Witkin, Cal. Evidence (2d ed. 1966) Introduction of Evidence at Trial, §§ 1136-1138, pp. 1054-1056.)

In the seminal case of *People* v. *Bender* (1945) 27 Cal.2d 164 [163 P.2d 8], the only evidence that defendant had killed his wife was circumstantial evidence. He complained on appeal that the trial court should have instructed to the effect that a guilty verdict required facts which could not be rationally reconciled with any theory other than guilt. *Bender* stated: "It cannot be too strongly emphasized that such [an instruction] enunciates a most important rule governing the use of circumstantial evidence. In unequivocal language it should be declared to the jury in every criminal case wherein circumstantial evidence is received." (*Id.*, at p. 175.)

*Bender* went on to find the error nonprejudicial because the jury had been instructed in language like the third paragraph of CALJIC No. 2.01 and because the only reasonable interpretation of the evidence was that the defendant had perpetrated the homicide and done so with malice aforethought. (27 Cal.2d at p. 177.) Neither of those factors is present here. None of the required instruction, which is set forth in CALJIC No. 2.01, was given.

In *People* v. *Yrigoyen* (1955) 45 Cal.2d 46 [286 P.2d 345], there was direct evidence that the defendant issued a check with insufficient funds in his account, but circumstantial evidence was relied upon to show his criminal knowledge and intent to defraud. Following *Bender, Yrigoyen* held that the trial court erred in failing to give an instruction like the first paragraph of CALJIC No. 2.01. The error was held to be prejudicial, since the circumstantial evidence was conflicting and "[h]ad the instruction in question been given, the jury might have concluded that the circumstantial evidence, while entirely consistent with defendant's guilt, was also consistent with a rational conclusion that he was innocent." (*People* v. *Yrigoyen, supra,* at p. 50.) Since there is conflicting evidence in the case before us, regarding appellant's identification, we too must conclude that the error was prejudicial.[3]

Finally, we are influenced by the fact that the jury did not find this to be an easy case. (See *People* v. *Cardenas* (1982) 31 Cal.3d 897, 907 [184 Cal.Rptr. 165, 647 P.2d 569].) Although the trial was relatively short, the jury deliberated over nine hours, asked for rereading of Mr. Castrellon's testimony twice, and rereading of Mr. Zuniga-Garcia's testimony once. Under the circumstances, we are constrained to hold that the trial court's refusal to give CALJIC No. 2.01 constituted prejudicial error.

IV

■ At the sentencing hearing, the trial court struck the section 12022.5 two-year enhancement for personal use of a firearm, relying on the mitigating ground that appellant was induced by others to participate in the crime. We note for purposes of retrial that the use enhancement could not have been imposed in any event. Section 1170.1, subdivision (e) provides: "When two or more enhancements under Sections . . . 12022.5 [or] 12022.7 . . . may be imposed for any single offense, only the greatest enhancement shall apply," except for certain offenses not pertinent here.[4] The trial court was

---

[3]We therefore find inapposite the cases cited by respondent for the proposition that a circumstantial evidence instruction is unnecessary for in those cases the People did not rely substantially on circumstantial evidence or the evidence was not equally consistent with a rational conclusion of innocence. (*People* v. *Wiley* (1976) 18 Cal.3d 162, 174-175 [133 Cal.Rptr. 135, 554 P.2d 881]; *People* vₗ *Butler* (1980) 104 Cal.App.3d 868, 876-878 [162 Cal.Rptr. 913]; *People* v. *Malbrough* (1961) 55 Cal.2d 249 [101 Cal.Rptr. 632, 359 P.2d 30].)

[4]The briefing by the parties gives conflicting readings to the statute. We believe the confusion arises from an apparent typographical error in the quotation of section 1170.1, subdivision (e) in the 1986 Compact Edition of West's California Penal Code. The subdivision is there quoted as: "When two or more enhancements under Sections as provided in either Section 12022, 12022.4, or 12022.5 imposed for any single offense [*sic*], only the greatest enhancement shall apply; . . ." The correct language is quoted above. At oral argument, respondent recognized this typographical error and conceded this issue.

therefore limited to the three-year great bodily injury enhancement imposed pursuant to section 12022.7. (*People* v. *Hopkins* (1985) 167 Cal.App.3d 110, 118-119 [212 Cal.Rptr. 888].) We leave to the discretion of the trial court whether, if appellant is similarly convicted on retrial, mitigating circumstances justify any other reduction of his sentence.

The judgment is reversed.

Kingsley, J., and Recana, J.,* concurred.

A petition for a rehearing was denied August 6, 1986.

*Assigned by the Chairperson of the Judicial Council.