OPINION
If the defendant-shooter, in one trial, is acquitted of murder, may the defendant-aider and abettor, in another trial, be convicted of murder? Our answer is yes. Collateral estoppel, as we explain, does not bar the aider and abettor's conviction. We correct the judgment and, as corrected, affirm the judgment. *Page 1091 
 PROCEDURAL AND FACTUAL BACKGROUND
On May 22, 1990, the Los Angeles County District Attorney filed an information charging Donald Rose and Daniel Wilkins (appellant) with the September 5, 1987, murder (Pen. Code,[1] § 187, subd. (a); count I) and robbery (§ 211; count II) of William Dabbs. It was also alleged that Donald Rose personally used a firearm in the commission of both offenses (§ 12022.5).
On February 19, 1991, appellant's severance motion was granted.
Donald Rose was tried first and found not guilty of both murder and robbery.
Appellant was then tried and on January 28, 1992, a jury found appellant guilty of first degree murder, robbery and found true an armed principal allegation. (§ 12022, subd. (a)(1).) This appeal followed.
There being no insufficiency of evidence claim, the essential facts may be stated simply. (People v. Barnes (1986)42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)
On September 5, 1987, members of the East Coast Crips gang were in Yolanda McDuffy's livingroom in South Central Los Angeles. Donald Rose, a Crips gang member, was being teased and called a "buster" (meaning a punk) because he had not "proved himself." Donald Rose denied being a "buster." Appellant, a friend of Donald Rose, said "Well, if you ain't, let's go" and gave Donald Rose a .22-caliber pistol. Appellant and Donald Rose left the apartment and walked toward 92nd and Central Avenue, the turf of two Blood gangs, enemies of the 89 East Coast Crips.
That same early morning, a California Highway Patrol officer stopped a speeding and weaving car at 92nd and Central Avenue. The driver was arrested but the passenger, victim William Dabbs, was left at the scene. He went to a phone booth in front of Mike's liquor store and called his cousin, Tyrone, for a ride. During the conversation, Tyrone heard someone say to William Dabbs, "Hey, cuz, what's up?" and William answered "Hey, man, that's all I got." Tyrone then heard William's telephone drop, the sound of a scuffle, and two .22-caliber gunshots.
William Dabbs was taken by ambulance to Martin Luther King hospital where he died from a gunshot wound to the stomach. *Page 1092 
Three months later "confidential informant," Anthony Spratley, gave investigating officers information about a gang-related robbery murder. The officers did not then link that information to the murder of William Dabbs. Spratley, now in state prison, was again interviewed by investigating officers. Finally, after several interviews of Spratley in August 1989, the investigating officers linked the William Dabbs murder to Donald Rose and appellant. Both were arrested. Appellant confessed to aiding and abetting Donald Rose who he said robbed and shot William Dabbs. Donald Rose did not confess.
At appellant's trial,[2] Anthony Spratley recanted and was impeached by the investigating officers.
 DISCUSSION
1. Appellant contends the collateral estoppel doctrine barsthe conviction of an aider and abettor if the allegedperpetrator has been acquitted.
Before discussing what is at issue, it may be helpful to indicate what is not.
Not at issue are: multiple defendant inconsistent verdicts at a joint trial (compare People v. Stone (1963) 213 Cal.App.2d 260
[28 Cal.Rptr. 522] [inconsistent murder verdicts permissible]with People v. Allsip (1969) 268 Cal.App.2d 830 [74 Cal.Rptr. 550] [inconsistent rape verdicts not permissible]); whatnontrial proceedings satisfy collateral estoppel requirements (People v. Fuentes (1986) 183 Cal.App.3d 444 [237 Cal.Rptr. 465] [confederate's guilty plea does not satisfy collateral estoppel requirements]; Lucido v. Superior Court (1990)51 Cal.3d 335 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995] [finding at probation violation hearing does not bar criminal trial]); collateral estoppel involving multiple trials of the same defendant (People v. Asbury (1985) 173 Cal.App.3d 362
[218 Cal.Rptr. 902]); prosecutions of the same defendant for the same conduct by different county prosecutors (People v.Torres (1992) 6 Cal.App.4th 1324 [8 Cal.Rptr.2d 332] [granting of § 1538.5 motion by Los Angeles County Superior Court judge not binding on San Mateo County Superior Court judge]); prosecutions of the same defendant for the same conduct by federal and then state prosecutors (People v. Meredith (1992) 11 Cal.App.4th 1548
[15 Cal.Rptr.2d 285] [suppression of evidence ruling in federal court not binding upon state court]); collateral estoppel applied against a criminal defendant (e.g., compare People v.Ford (1966) 65 Cal.2d 41 [52 Cal.Rptr. 228, 416 P.2d 132] [collateral estoppel applied against criminal defendant] *Page 1093 
with Gutierrez v. Superior Court (1994) 24 Cal.App.4th 153
[29 Cal.Rptr.2d 376] [collateral estoppel may not be applied against criminal defendant]).
(1) At issue is only this question: may the acquittal of one confederate bar the conviction of another? Generally, the answer is no, collateral estoppel is inapplicable (People v.Garrison (1989) 47 Cal.3d 746, 782 [254 Cal.Rptr. 257,765 P.2d 419]; People v. Howard (1988) 44 Cal.3d 375, 412 [243 Cal.Rptr. 842, 749 P.2d 279]; People v. Nunez (1986)183 Cal.App.3d 214, 220 [228 Cal.Rptr. 64]; People v. Mata (1978)85 Cal.App.3d 233, 237 [149 Cal.Rptr. 327]; 1 Witkin Epstein, Cal. Criminal Law (2d ed. 1988) § 344, pp. 396-399).
The reasons for the general inapplicability of collateral estoppel involving different defendants is best explained inStandefer v. United States (1980) 447 U.S. 10 [64 L.Ed.2d 689, 100 S.Ct. 1999]. The issue was identical to the instant one: "whether a defendant accused of aiding and abetting in the commission of a[n] . . . offense may be convicted after the named principal has been acquitted of that offense." (Id., at p. 11 [64 L.Ed.2d at pp. 692-693].) In holding collateral estoppel inapplicable, Standefer noted, "[t]he doctrine of nonmutual collateral estoppel was unknown to the common law. . . ." (Id., at p. 12 [64 L.Ed.2d at p. 698.) It then distinguished civil cases, where nonmutual collateral estoppel has been applied, from criminal cases:
"First, in a criminal case, the Government is often without the kind of `full and fair opportunity to litigate' that is a prerequisite of estoppel. Several aspects of our criminal law make this so: the prosecution's discovery rights in criminal cases are limited, both by rules of court and constitutional privileges; it is prohibited from being granted a directed verdict or obtaining a judgment notwithstanding the verdict no matter how clear the evidence in support of guilt, cf. Fed. Rule Civ. Proc. 50; it cannot secure a new trial on the ground that an acquittal was plainly contrary to the weight of the evidence, cf. Fed. Rule Civ. Proc. 59; and it cannot secure appellate review where a defendant has been acquitted. See United States v.Ball, 163 U.S. 662, 671 [41 L.Ed. 300, 303, 16 S.Ct. 1192] (1896).
"The absence of these remedial procedures in criminal cases permits juries to acquit out of compassion or compromise or because of `"their assumption of a power which they had no right to exercise, but to which they were disposed through lenity."'Dunn v. United States, 284 U.S. 390, 393 [76 L.Ed. 356, 359, 52 S.Ct. 189, 80 A.L.R. 161] (1932), quoting Steckler v.United States, 7 F.2d 59, 60 (CA2 1925). See generally H. Kalven H. Zeisel, The American Jury 193-347 (ed. 1976). It is of course true that verdicts induced by passion and prejudice are not unknown in civil suits. But *Page 1094 
in civil cases, post-trial motions and appellate review provide an aggrieved litigant a remedy; in a criminal case the Government has no similar avenue to correct errors. Under contemporary principles of collateral estoppel, this factor strongly militates against giving an acquittal preclusive effect. See Restatement (Second) of Judgments § 68.1 (Tent. Draft No. 3, 1976) (denying preclusive effect to an unreviewable judgment).
"The application of nonmutual estoppel in criminal cases is also complicated by the existence of rules of evidence and exclusion unique to our criminal law. It is frequently true in criminal cases that evidence inadmissible against one defendant is admissible against another. The exclusionary rule, for example, may bar the Government from introducing evidence against one defendant because that evidence was obtained in violation of his constitutional rights. And the suppression of that evidence may result in an acquittal.
"The same evidence, however, may be inadmissible against other parties to the crime `whose rights were [not] violated.'Alderman v. United States, 394 U.S. 165, 171-172 [22 L.Ed.2d 176, 185, 89 S.Ct 961] (1969). Accord, Rakas v. Illinois,439 U.S. 128, 134 [58 L.Ed.2d 387, 395, 99 S.Ct. 421] (1978). In such circumstances, where evidentiary rules prevent the Government from presenting all its proof in the first case, application of nonmutual estoppel would be plainly unwarranted." (447 U.S. at pp. 22-24 [64 L.Ed.2d at pp. 699-700], fns. omitted.)
Finally, Standefer observed: "In denying preclusive effect to [the principal's] acquittal, we do not deviate from the sound teaching that `justice must satisfy the appearance of justice.' [Citation.] This case does no more than manifest the simple, if discomforting, reality that `different juries may reach different results. . . . That is one of the consequences we accept under our jury system.' [Citation.] While symmetry of results may be intellectually satisfying, it is not required." (447 U.S. at p. 25 [64 L.Ed.2d at p. 701].)
In People v. Taylor (1974) 12 Cal.3d 686 [117 Cal.Rptr. 70,527 P.2d 622], upon which appellant relies, our Supreme Court created a narrow exception to nonmutual collateral estoppel in criminal cases.
Taylor involved three defendants, Taylor, Smith, and Daniels, who planned a liquor store robbery. Smith and Daniels entered the liquor store while Taylor remained outside in the getaway car. Inside the liquor store a gun battle ensued between the proprietors and Smith. Smith was killed. *Page 1095 
Daniels was charged with but acquitted of Smith's murder.[3] In a separate trial, Taylor was convicted of the first degree murder of Smith. Our Supreme Court reversed the conviction, holding collateral estoppel applicable to an "accused's guilt . . . predicated on his vicarious liability for the acts of a previously acquitted confederate." (12 Cal.3d at p. 698.)
The Supreme Court made plain the narrowness of its holding: ". . . we limit today's holding to the particular circumstances of the instant case. . . ." (12 Cal.3d at p. 698.) It explained that in order for the exception to apply there had to befactual issue identity. In Taylor, there was such identity because evidence of malice was the same in both trials. (Ibid.) Moreover, Taylor distinguished cases where an aider and abettor, unlike Taylor sitting outside in the getaway car, "was on the scene of the crime and actively engaged in its commission." (Id., at p. 692, fn. 6.) It explicitly did "not reach the question of whether the doctrine of collateral estoppel should be applied to bar prosecution of a person who directed, instigated or participated in a crime for which the perpetrators were acquitted." (Id., at p. 697, fn. 14.) Finally, it applied collateral estoppel because it was unlikely its application "will result in spreading the effects of a possibly erroneous acquittal. . . ." (Id., at p. 698.)
Except for People v. Superior Court (Jackson) (1975)44 Cal.App.3d 494 [118 Cal.Rptr. 702], which applied Taylor to bar the conspiracy conviction of Jackson based upon the same evidence which had resulted in the acquittal of all other alleged conspirators, Taylor has been limited to its facts. (People
v. Mata, supra, 85 Cal.App.3d 233 [Castro, a confederate of Mata and Guerrero, fatally stabbed a victim. Guerrero was separately tried and convicted of second degree murder. Collateral estoppel did not bar Mata's later conviction of firstdegree murder]; People v. Nunez, supra, 183 Cal.App.3d 214
[Nunez's confederates, in separate trials, were convicted of conspiracy to commit voluntary manslaughter and of voluntary manslaughter. Collateral estoppel did not bar Nunez's convictions of conspiracy to commit murder and of first degree murder]; see also People v. Howard, supra, 44 Cal.3d 375, 411-412;People v. Garrison, supra, 47 Cal.3d 746, 781-782.)
We find Taylor inapplicable and hold the collateral estoppel doctrine did not bar appellant's convictions of murder and robbery.
The evidence against appellant was strong but against Donald Rose, weak. It was appellant's confession, admissible against him but not admissible against Donald Rose, that caused the severance and separate trials. *Page 1096 
To paraphrase Lucido v. Superior Court, public confidence in the integrity of the judicial system is not threatened when two tribunals render different judgments on different facts involving different defendants. (Lucido v. Superior Court,supra, 51 Cal.3d 335, 355.) It would be threatened if legal perversity required the exoneration of a defendant against whom proof was certain, solely because of the acquittal of a confederate against whom proof was uncertain.[4]
2. Appellant contends his trial counsel was ineffective.
Trial counsel first raised collateral estoppel during a motion for new trial. Appellant contends trial counsel was ineffective for not raising it earlier.
The contention is meritless because, as we have explained, collateral estoppel being inapplicable, an earlier motion would also have been denied.[5]
3. Appellant contends there was juror misconduct. (2) At a motion for new trial hearing, appellant's aunt testified two jurors "appeared" to sleep during part of defense counsel's final argument. Appellant contends this evidence of juror misconduct requires reversal. We disagree.
As the trial court noted, people close their eyes without necessarily being asleep. The trial court further noted, "I didn't see it, you [defense counsel] didn't see it, your client didn't see it."
Justice Mosk's observation is apt: "Although implicitly recognizing that juror inattentiveness may constitute misconduct, courts have exhibited an understandable reluctance to overturn jury verdicts on the ground of inattentiveness during trial. In fact, not a single case has been brought to our attention which granted a new trial on that ground. Many of the reported cases involve contradicted allegations that one or more jurors slept through part of a trial. Perhaps recognizing the soporific effect of many trials when viewed from a layman's perspective, these cases uniformly decline to order a new trial in the absence of convincing proof that the jurors were actually asleep during material portions of the trial." (Hasson v. Ford Motor Co.
(1982) 32 Cal.3d 388, 411 [185 Cal.Rptr. 654, 650 P.2d 1171].)
We find no "manifest and unmistakable abuse of discretion" by the trial court (People v. Williams (1988) 45 Cal.3d 1268, 1318 [248 Cal.Rptr. 834, *Page 1097 756 P.2d 221]) in denying appellant's new trial motion based upon juror misconduct.
4. Appellant contends he was denied due process by beingcharged with malice murder but convicted of felony murder.
In the language of section 187, appellant was charged with malice aforethought murder. He contends he was denied due process by being convicted of an uncharged and separate crime, felony murder.
The contention, based upon People v. Dillon (1983)34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697], is identical to the one we considered and rejected in People v. Scott (1991)229 Cal.App.3d 707, 712-718 [280 Cal.Rptr. 274]. No purpose would be served by reiterating our analysis. It suffices to observe that we, along with other courts which have considered the contention (People v. Watkins (1987) 195 Cal.App.3d 258, 265 [240 Cal.Rptr. 626]; People v. Johnson (1991) 233 Cal.App.3d 425, 454 [284 Cal.Rptr. 579]; Morrison v. Estelle (9th Cir. 1992)981 F.2d 425, 428), remain unpersuaded.
Appellant notes, and respondent concedes, the judgment does not reflect the trial court's sentence of 25 years to life, plus 1 year pursuant to section 12022, subdivision (a)(1) of the Penal Code. Instead, it incorrectly states "26 years. . . ." We shall order the judgment corrected.
 DISPOSITION
The judgment is ordered corrected to read: "25 years to life, plus 1 year pursuant to 12022(a)(1) Penal Code."
As corrected, the judgment is affirmed.
Lillie, P.J., and Johnson, J., concurred.
Appellant's petition for review by the Supreme Court was denied October 20, 1994.
[1] Statutory references, unless otherwise noted, are to the Penal Code.
[2] The transcript of the Donald Rose trial is not part of the record on appeal.
[3] The prosecution could not rely on the felony-murder rule because a confederate, not a robbery victim, was killed. (People v. Washington (1965) 62 Cal.2d 777, 781 [44 Cal.Rptr. 442,402 P.2d 130].)
[4] Of course, if evidence against a confederate was so uncertain that charges could not even be brought, there would be no "acquittal" and no collateral estoppel.
[5] Had the motion been made pretrial, the prosecutor's opposition, we have no reason to doubt, would have noted the different evidence available against appellant than was offered against Donald Rose. *Page 1098