[No. D020205. Fourth Dist., Div. One. May 5, 1995.]

THE PEOPLE, Plaintiff and Respondent, v
BYRON SUMMERSVILLE, Defendant and Appellant.

## Counsel

Melody Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Holly D. Wilkens and Jeffrey J. Koch, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BENKE, J.—A jury found Byron Summersville guilty of the second degree murder (Pen. Code,[1] § 187, subd. (a)) of Timothy Burke with personal knife use (§ 12022, subd. (b)) (count 1) and assault with a deadly weapon (§ 245, subd. (a)(1)) on Alberto Fox with personal knife use and personal infliction of great bodily injury (§ 12022.7) (count 2). The court sentenced him to twenty-three years to life in prison: on count 2, the four-year upper term for assault with a deadly weapon, a consecutive three-year term for personal infliction of great bodily injury, and a stayed term for knife use; and on count 1, consecutive terms of fifteen years to life for second degree murder and one year for knife use.

Summersville appeals, contending his second degree murder conviction, under an aiding and abetting theory, must be reversed because the principal was convicted of first degree murder while Summersville was acquitted of first degree murder; the court erroneously imposed the knife use enhancement on count 2 because personal weapon use is an element of assault with a deadly weapon; the knife use enhancement on count 1 punishes him for an act for which he was punished under count 2, in contravention of section 654; and the consecutive sentences on counts 1 and 2 constitute an abuse of discretion because the court treated a criminal act, the stabbing of Fox, as separate acts of violence. We agree with Summersville's second and third contentions.

### FACTS

On December 8, 1992, Alberto Fox and Timothy Burke drank beer and vodka kamikazes and smoked crack cocaine. They then went to the home of Don Bailey and Dupree Allen, Burke's cocaine suppliers. Burke claimed that Bailey and Allen owed him money.

After Fox and Burke arrived at Bailey and Allen's apartment and parked their car, they saw Bailey. Burke and Bailey conversed, then Burke yelled at Bailey about the money and said he had a weapon. Fox and Burke left. They went to a gas station where they drank more beer, then, with Fox driving, they proceeded to the apartment where they lived with Fox's sister.

---

[1] All statutory references are to the Penal Code.

Fox parked across the street from the apartment. Within seconds, a car pulled up next to theirs, the doors flew open, and Bailey and Allen jumped out. Also in the car was Summersville. Bailey and Allen told Burke, who had apparently alighted from his car, that it was "time to get fucked-up."

Summersville alighted from Bailey and Allen's car, said "got something for you" or "it is your time," and jabbed at Fox through the open window of Burke's car. Summersville lunged at Fox three or four times as Fox tried to start the car. At first Fox thought that Summersville was punching him, then he felt blood. Fox succeeded in starting the car, drove to the back of the apartment complex, left the car's engine running, and jumped out.

Bleeding badly, Fox walked cautiously down a walkway. He saw Bailey and Allen's car pulling away. He saw Burke lying at the side of the street and called to him but received no response. Fox made it to his apartment and banged on the door. His sister answered. He told her to call 911 because he and Burke had been stabbed.

When the police arrived, Burke was still alive, but he died shortly thereafter due to internal bleeding. He had suffered several stab wounds. Fox survived the attack but sustained multiple stab wounds to his armpit, elbow, and chest, including one that penetrated the lung.

## DISCUSSION

### I

Summersville contends his second degree murder conviction, under an aiding and abetting theory, must be reversed because Bailey, the only principal to be apprehended and charged, was convicted of first degree murder,[2] while Summersville was acquitted of first degree murder.

A defendant may be convicted of first degree murder as an aider and abettor even though the principal has been acquitted of murder in a prior separate trial. (*People* v. *Wilkins* (1994) 26 Cal.App.4th 1089, 1090-1091 [31 Cal.Rptr.2d 764].) Generally, the doctrine of collateral estoppel does not apply to bar the conviction of one confederate due to the acquittal of another. (*Id.* at pp. 1093-1094, citing *Standefer* v. *United States* (1980) 447 U.S. 10 [64 L.Ed.2d 689, 100 S.Ct. 1999].) There is, however, a narrow exception to this rule. (*People* v. *Wilkins*, *supra*, 26 Cal.App.4th at p. 1094, citing *People* v. *Taylor* (1974) 12 Cal.3d 686 [117 Cal.Rptr. 70, 527 P.2d 622].)

---

[2]Bailey's appeal of his conviction is currently pending before this court. (*People* v. *Bailey* (D019193).)

In *People* v. *Taylor, supra*, 12 Cal.3d 686, Smith and Daniels robbed a liquor store while Taylor waited outside in the getaway car. (*Id.* at pp. 689-690.) During the robbery, Smith was killed. (*Id.* at p. 690.) The California Supreme Court agreed with Taylor's contention on appeal that his first degree murder conviction, which was predicated solely on the conduct of Smith and Daniels, was barred by the prior acquittal of Daniels of the same charge. (*Id.* at pp. 688-689, 691.) The first two requirements of the collateral estoppel doctrine were satisfied: the issue necessarily decided at the previous trial was identical to the one sought to be relitigated, and the previous trial resulted in a final judgment on the merits. The issue the People sought to relitigate, whether Daniels's or Smith's conduct supported a finding of implied malice, was resolved adversely to the People in Daniels's trial; and Daniels's acquittal was a final judgment on the merits. (*Id.* at pp. 691-692.)

In *Taylor, supra*, 12 Cal.3d 686, the failure of the third requirement of collateral estoppel, identity of parties, was not fatal for three reasons. (*Id.* at pp. 692, 696-698.) First, the issue resolved against the People in the first trial was clearly the same as the issue at the second trial because Taylor's guilt was predicated only on vicarious liability, and there was no indication that Daniels's acquittal was "based on anything other than a final determination that his and Smith's acts were not sufficiently provocative to support a finding of implied malice." (*Id.* at pp. 696-697, fn. omitted.) The *Taylor* court noted "that Daniels did not offer a defense such as insanity, intoxication, or duress based on his personal lack of culpability irrespective of the criminality of his acts." (*Id.* at p. 697, fn. 13.) Second, binding the People while Taylor was not similarly bound by the result of the first trial would not be unfair because at Daniels's trial, "the People had both the incentive and opportunity to litigate fully the issue of the provocativeness of the conduct of Daniels and Smith as Daniels appeared to be the leader in the robbery which resulted in the shootout," while Taylor played a minor role in the events leading to Smith's death; there was no evidence Taylor directed or instigated the robbery; and Daniels's acquittal affected only the case against Taylor as there were no other potential defendants. (*Id.* at ·p. 697.) The *Taylor* court expressly declined to reach the question whether collateral estoppel would "bar the prosecution of a person who directed, instigated or participated in a crime for which the perpetrators were acquitted." (*Id.* at p. 697, fn. 14.) Third, it was unlikely that application of collateral estoppel would multiply the results of a possibly erroneous acquittal, and the inconsistent outcomes of the Daniels and Taylor trials could not be explained by differences in evidence or jury instructions. (*Id.* at pp. 696, 698.) The *Taylor* court expressly limited its "holding to the particular circumstances of the instant case" (*id.* at p. 698) and for the most part subsequent cases have

limited *Taylor* to its facts (*People v. Wilkins, supra,* 26 Cal.App.4th at p. 1095).

■ Here, the requirements of the doctrine of collateral estoppel have not been met. First, as Bailey's appeal is still pending, there is no final judgment on the merits. Second, all of the reasons outlined by *Taylor* for dispensing with the requirement of identity of parties are not present here. The record here fails to show the basis for Bailey's conviction, or whether the differing outcomes of the two trials can be explained by differences in evidence or jury instructions. Finally, unlike Taylor, Summersville was present at the crime scene and participated in the criminal events.

In *Wilkins, supra,* 26 Cal.App.4th 1089, at a gang gathering Donald Rose was teased, told he had not "proved himself," and called a "buster," which he denied. Wilkins gave Rose a pistol, saying, "Well, if you ain't, let's go," and the two left the gathering together. Early the same morning, William Dabbs was fatally shot. (*Id.* at p. 1091.) An informant, Anthony Spratley, gave police officers information leading to the arrest of Rose and Wilkins. Wilkins confessed to aiding and abetting Rose who he said had robbed and shot Dabbs, but Rose did not confess. (*Id.* at p. 1092.) After the granting of Wilkins's severance motion, Rose was acquitted of murder and robbery and Wilkins was subsequently found guilty of first degree murder and robbery. (*Id.* at p. 1091.) At Wilkins's trial, Spratley recanted and was impeached by the investigating officers. (*Id.* at p. 1092.)

The *Wilkins* court held that the doctrine of collateral estoppel did not bar Wilkins's murder and robbery convictions, noting the evidence against Wilkins was strong while the evidence against Rose was weak; and that Wilkins's confession, admissible against him but not against Rose, caused the severance and separate trials. (26 Cal.App.4th at p. 1095.) The *Wilkins* court concluded: "[P]ublic confidence in the integrity of the judicial system is not threatened when two tribunals render different judgments on different facts involving different defendants. [Citation.] It would be threatened if legal perversity required the exoneration of a defendant against whom proof was certain, solely because of the acquittal of a confederate against whom proof was uncertain." (*Id.* at p. 1096, italics and fn. omitted.)

Here, if Bailey had been acquitted, confidence in the integrity of the judicial system would be seriously threatened were we required to exonerate Summersville for that reason. It would be yet more incongruous to absolve Summersville because Bailey was convicted in a separate trial of a greater degree of murder. ■ "[T]he actual perpetrator and the aider and abettor may severally be convicted, convicted of a lesser offense, or acquitted

without reference to the conviction or acquittal of the other." (*People* v. *Griffith* (1960) 181 Cal.App.2d 715, 719 [5 Cal.Rptr. 620], citing *People* v. *Simpson* (1944) 66 Cal.App.2d 319, 329 [152 P.2d 339].) It is a "simple, if discomforting, reality that 'different juries may reach different results . . . . That is one of the consequences we accept under our jury system.' [Citation.] While symmetry of results may be intellectually satisfying, it is not required." (*People* v. *Wilkins*, *supra*, 26 Cal.App.4th at p. 1094, citing *Standefer* v. *United States*, *supra*, 447 U.S. at p. 25 [64 L.Ed.2d at p. 701].)[3]

█ Summersville cites *People* v. *Solis* (1993) 20 Cal.App.4th 264 [25 Cal.Rptr.2d 184]. There, Solis drove a car while his passenger Moffat shot O'Brien. Solis was convicted as an aider and abettor of second degree murder. The appellate court rejected his assertion of error in the trial court's failure to instruct the jury on uncharged predicate offenses, that is, crimes that were "intended or expected as a result of his encouragement," thus giving rise to aiding and abetting liability. (*Id.* at pp. 267, 271, 273, 275-276.) This issue is irrelevant to Summersville's appeal.

Summersville points to the statement in *Solis* that "[e]ither the aider and abettor is guilty of the serious crime committed by the actual perpetrator or he is not guilty at all." (20 Cal.App.4th at p. 273, fn. 7.) This statement, however, came in the context of a discussion of the foreseeability of the crime the principal actually committed, a requirement for the aider and abettor's liability. (*Id.* at pp. 271-273.) Further evidence of *Solis*'s failure to aid Summersville's position is the fact the *Solis* trial court apparently instructed on both first and second degree murder. (*Id.* at p. 273, fn. 7.)

If Bailey had been acquitted, Summersville could not thereby obtain reversal of his second degree murder conviction. (Cf. *People* v. *Wilkins*, *supra*, 26 Cal.App.4th at pp. 1090-1091.) It would therefore be illogical to allow him to benefit by Bailey's conviction of a more serious crime. We decline Summersville's invitation to reverse his second degree murder conviction.

## II

█ Summersville contends the court erroneously imposed the knife-use enhancement (§ 12022, subd. (b)) on count 2, assault by means of force

---

[3]In *People* v. *Blackwood* (1939) 35 Cal.App.2d 728 [96 P.2d 982], the perpetrator and the aider and abettor were convicted in the same trial of first degree murder and second degree murder, respectively, with the second degree murder conviction then reduced to manslaughter. (*Id.* at pp. 729, 733.) The reviewing court affirmed. (*Id.* at p. 729.) It stated: "It is settled that if [the perpetrator and the aider and abettor] have separate trials the judgment against one has no bearing upon the judgment against the other, for the reason that the evidence in the two cases may not be the same. The [aider and abettor] may be convicted even though the one who committed the act has been acquitted in another trial." (*Id.* at p. 733.)

likely to cause great bodily injury (§ 245, subd. (a)(1)), because personal weapon use is an element of section 245, subdivision (a)(1). The People concede the point.

A conviction under section 245, subdivision (a)(1) cannot be enhanced pursuant to section 12022, subdivision (b). (*People* v. *McGee* (1993) 15 Cal.App.4th 107, 110 [19 Cal.Rptr.2d 12].) We therefore strike the enhancement. (*Ibid.*)

## III

■ Summersville contends the knife-use enhancement to count 1, second degree murder, punishes him for an act for which he was punished under count 2, in contravention of section 654.

At sentencing, Summersville asked the court to strike the enhancement under section 1385. Counsel had made a similar request during a discussion of jury instructions. We therefore reject respondent's contention that Summersville failed to object below.

Respondent concedes that the enhancement at issue can be based only on the theory that Summersville personally used a knife in aiding and abetting Burke's murder by using the knife on Fox. However, an enhancement on this theory would constitute impermissible double punishment under section 654 because Summersville was also punished for this knife use pursuant to his conviction under section 245, subdivision (a)(1) in count 2.

This is not, as respondent urges, a case of a single act involving violence against different victims. Respondent also contends that, by stabbing Fox, Summersville prevented him from getting out of the car and assisting Burke. This does not, however, convert Summersville's knife use against Fox to knife use against Burke.[4] For the above reasons, we strike the section 12022, subdivision (b) enhancement to count 1.

## IV

■ Summersville contends that consecutive sentences on counts 1 and 2 constitute an abuse of discretion because the trial court treated a single criminal act, the stabbing of Fox, as separate acts of violence.

---

[4]Section 654 states: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars the prosecution for the same act or omission under any other."

First, we note that respondent is incorrect in asserting that Summersville failed to object on this basis below. At sentencing, defense counsel expressly argued that there were not separate acts of violence and that the sentences should be concurrent.

Summersville argues that he should not be sentenced consecutively for a separate act of violence which he committed only vicariously. He cites no authority directly supporting this position. Moreover, it would be logically inconsistent to allow him to be convicted of murder on an aiding and abetting theory while refusing to classify this as a separate act of violence within the meaning of California Rules of Court, rule 425(a)(2).[5]

Summersville also claims that the imposition of consecutive sentences and the enhancement of the sentence on count 1 for personal knife use constitutes use of the same circumstance to impose consecutive sentences and to enhance, in contravention of California Rules of Court, rule 425(b). Since we have stricken the enhancement on count 1, this argument is of no assistance to Summersville.

The sentencing court did not abuse its discretion in imposing consecutive sentences.

### DISPOSITION

The judgment is modified to strike the personal knife use enhancements (§ 12022, subd. (b)) to counts 1 and 2. As so modified, the judgment is affirmed. The trial court is directed to amend the abstract of judgment accordingly and to notify the Department of Corrections of the amendment.

Kremer, P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 10, 1995.

---

[5]Rules 425(a)(2) lists as a criterion "affecting the decision to impose consecutive rather than concurrent sentences" the fact that "[t]he crimes involved separate acts of violence or threats of violence."