Filed 11/25/15  P. v. Godinez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TRINO GODINEZ,<br><br>    Defendant and Appellant. | B259354<br><br>(Los Angeles County<br>Super. Ct. No. GA088187) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Dorothy L. Shubin, Judge.  Affirmed as modified.

Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael C. Keller and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Trino Godinez (defendant) appeals from convictions of attempted murder, kidnapping, assault with a deadly weapon, and criminal threat. He contends that the trial court erred in failing to give a jury instruction on felony false imprisonment as a lesser included offense of kidnapping. Defendant also contends that the sentence imposed for kidnapping should have been stayed pursuant to Penal Code section 654,[1] and that the enhancement imposed in the assault count for the use of a deadly weapon must be stricken because use of a deadly weapon was an element of the crime. We agree that the deadly-weapon enhancement must be stricken, but find no merit to defendant's remaining contentions. We thus strike the enhancement, order the trial court to amend the abstract of judgment, and affirm the judgment as modified.

## BACKGROUND

Defendant was charged in an amended information with five felonies and one misdemeanor, as follows: count 1, the attempted willful, deliberate, and premeditated murder of Monica F. (Monica), in violation of sections 664 and 187, subdivision (a); count 2, kidnapping Monica, in violation of section 207, subdivision (a); count 3, assault with a deadly weapon upon Tai Plunkett, in violation of section 245, subdivision (a)(1); count 4, assault with a deadly weapon upon Monica, in violation of section 245, subdivision (a)(1); count 5, criminal threats against Monica, in violation of section 422, subdivision (a); and count 6, misdemeanor cruelty to Gizelle G., a child of 13 years, in violation of section 273a, subdivision (b). The amended information alleged as to counts 1, 3, and 4, that defendant had personally used a dangerous or deadly weapon in committing the crimes within the meaning of section 12022, subdivision (b)(1); and as to counts 1 and 4, that defendant personally inflicted great bodily injury on the victim under circumstances involving domestic violence, within the meaning of 12022.7, subdivision (e).

During trial the trial court dismissed the misdemeanor following motion of the prosecution. A jury convicted defendant of counts 1, 2, 4, and 5 as charged, and found

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

him not guilty of count 3. The jury found not true the allegation that the attempted murder was willful, deliberate and premeditated, but found true the remaining special allegations.

On September 5, 2014, the trial court sentenced defendant to prison for a term of 14 years 4 months as follows: the middle term of seven years for the attempted murder, plus four years for the great bodily injury enhancement and one year for the deadly weapon enhancement. For the kidnapping, the court imposed a consecutive one-third of the middle term, one year eight months. For the criminal threats, a consecutive one-third of the middle term or eight months. As to count 4, the court imposed the middle term of three years, plus enhancements of one and four years for the use of a deadly weapon and for causing great bodily injury, for a total term of eight years, which the court stayed pursuant to section 654.[2] The court imposed mandatory fines and fees, ordered defendant to pay victim restitution in an amount to be determined, and entered a protective order naming Monica the protected person. Defendant was awarded 714 days of custody credit, consisting of 621 actual days and 93 days of conduct credit.

Defendant filed a timely notice of appeal from the judgment.

**Prosecution evidence**

Defendant and Monica had been married for 15 years, and prior to 2012, defendant lived for awhile in Mexico. In 2012, Monica left defendant due to his recurring violence without notice, taking their two minor daughters, Gizelle and Madeline. For the family's safety Monica did not tell defendant where they lived. About six weeks before the events of November 21, 2012, defendant told Monica, "If I lost my family, I might as well just kill you if that's what you want." Defendant had made a similar threat five years before. This time, Monica applied for a restraining order. Defendant continued to have contact with his family through Skype, email and telephone, and Monica would sometimes meet defendant at a gas station in Burbank so he could

---

[2]     The trial court also sentenced defendant to a concurrent term of three years in prison in Case No. PA070758, after revoking defendant's probation in that case.

3

visit with the girls. They agreed to such a visit on November 21, 2012. Defendant did not have a car, so Monica agreed that defendant would drive her to work and then take the girls bowling. When Monica arrived at the gas station, defendant told Gizelle, who was in the front passenger seat, to get into the back. She complied after Monica insisted, and Monica moved over into the passenger seat so that defendant could drive. As defendant was driving down an alley he began questioning Monica about where she lived. When she refused to tell him, he yelled at her and demanded she tell him, adding that it would be best that she comply because she knew what he was capable of doing. Monica interpreted this statement to mean he would lose control and hit her as he had done in the past.

Monica continued to refuse to tell defendant where they lived, and she asked him to let them out of the car and leave them alone. Without stopping the car, defendant pulled a gun from his jacket, flashed it at her, and put it between his legs.[3] Again, she asked to be let out of the car. Monica was frightened for herself and for her daughters, and to alert the girls about the gun, she asked, "Why do you have a gun?" In response defendant hit her three times in the stomach and twice on the side of her face, while the car was moving. From the back seat it appeared to Gizelle that defendant hit Monica with his fist on her jaw and in her stomach. The girls screamed at defendant, asking him to stop while Monica again asked him to let them out of the car. Defendant made a right turn out of the alley, continued to drive toward Monica's workplace, and repeatedly told Monica to take him to the place where they lived. He said that he did not want her to leave him, and would find out one way or another where they lived. Monica was frightened when defendant drove past the street where she worked. After he stopped at a red light, defendant turned to grab Gizelle's iPod, and Monica removed her seat belt, unlocked her door, and got out of the car. She banged on the car next to them and asked the driver to call 911, but he just stared, so she did the same to the next car.

---

[3] Monica thought the gun was real, but upon examination by law enforcement it was determined to be a realistic-looking replica.

4

Monica then ran back to the gas station with defendant following her in the car. After leaving the car in the street, defendant caught up to Monica on foot near the cashier's booth, where he grabbed her and ordered her back into the car. When she refused, defendant took her by the arm, pulled a kitchen knife from his jacket, and they struggled. Gizelle chased defendant, and attempted to get between her parents as she begged defendant to stop. Monica repeatedly told Gizelle to move away, and when she did, defendant stabbed Monica twice in the abdomen.

After Monica fell to the ground, defendant continued trying to stab her as off-duty Deputy Sheriff Tai Plunkett and several citizens came to Monica's aid. When Deputy Plunkett came within two feet of defendant, defendant lunged at him with the knife before returning to his attempts to stab Monica. Finally, the deputy and other men grabbed defendant from behind, struggled to get him off Monica, and with much effort, subdued him until the police arrived.

**Defense evidence**

Emergency room physician Ryan O'Connor testified as the defense expert in the treatment of stab wounds. He described a laceration near Monica's navel being about an inch and a quarter long, which penetrated through skin and fat to the muscle level, but no deeper. Another cut on the upper abdomen was superficial and did not require stitches. There was also a one-third inch laceration on her thumb and first finger. None of Monica's injuries were life threatening.

**DISCUSSION**

**I. Instruction**

Defendant contends that his kidnapping conviction must be reversed because the trial court failed to instruct the jury on felony false imprisonment as the lesser included offense of kidnapping.[4]

---

[4] "False imprisonment is the unlawful violation of the personal liberty of another," and amounts to a felony when it is effected by violence, menace, fraud, or deceit. (§§ 236, 237, subd. (a).) "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the

5

False imprisonment is a lesser included offense of all types of kidnapping. (*People v. Morrison* (1964) 228 Cal.App.2d 707, 713.) "'A court must generally instruct the jury on lesser included offenses whenever the evidence warrants the instructions, whether or not the parties want it to do so. [Citation.]' [Citations.] '[T]he sua sponte duty to instruct on lesser included offenses, unlike the duty to instruct on mere defenses, arises even against the defendant's wishes, and regardless of the trial theories or tactics the defendant has actually pursued.' [Citation.]" (*People v. Beames* (2007) 40 Cal.4th 907, 926 (*Beames*).) "The obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given. [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)

At trial, defendant objected to the instruction he now claims the trial court should have given, and he persuaded the court to give an instruction on misdemeanor false imprisonment instead. Defense counsel explained to the court: " I'm not requesting the felony false imprisonment as a lesser due to the fact that I believe the only difference between the felony false imprisonment charge and the kidnapping charge, element wise, is the movement element. And it's not my argument that the movement element has not been met in this case. So, rather, it's my argument that . . . the misdemeanor false imprisonment would be the basis of my argument and an alternative to the kidnapping charge." Counsel added, "Specifically, it would be my argument that . . . Monica was detained or remained captive in the car due to the car moving, not the force or fear of [defendant]."

Respondent contends that defendant's claim is barred by the doctrine of invited error. We agree. ""'[A] defendant may not invoke a trial court's failure to instruct on a lesser included offense as a basis on which to reverse a conviction when, for tactical reasons, the defendant persuades a trial court not to instruct on a lesser included offense supported by the evidence. [Citations.] In that situation, the doctrine of invited error bars

---

person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." (§ 207, subd. (a).)

6

the defendant from challenging on appeal the trial court's failure to give the instruction.'"' [Citation.]" (*Beames, supra*, 40 Cal.4th at p. 927.)

Defendant counters that *Beames* is distinguishable because defense counsel in that case had expressed "a *deliberate* tactical purpose in resisting the instructions." (*Beames, supra*, 40 Cal.4th at p. 927, italics added.) Defendant argues that because the evidence below supported a finding that the movement was not substantial, there could be no *reasonable* tactical purpose in conceding the asportation element of kidnapping. Apparently equating "deliberate" with "reasonable," defendant contends that defense counsel did not have any tactical purpose. Defendant then concludes, without citation to authority: "Accordingly, the doctrine of invited error does not apply."

A deliberate tactical choice may lead to invited error even if it was an incompetent choice. (*People v. Wader* (1993) 5 Cal.4th 610, 657-658.) Thus, an error does not become less invited because it was unreasonable. Here, it is clear from defense counsel's explanation to the court that a deliberate tactical choice was made. We need not further determine whether it was reasonable or unreasonable. Assuming for this discussion that the trial court erred in "acced[ing] to the defendant's wishes, the defendant may not argue on appeal that in doing so the court committed prejudicial error, thus requiring a reversal of the conviction." (*People v. Barton* (1995) 12 Cal.4th 186, 198.) Regardless, we find any such error harmless.

Kidnapping requires movement that is substantial, considering all the circumstances. (*People v. Martinez* (1999) 20 Cal.4th 225, 232-233.) On the other hand, "false imprisonment can occur with *any* movement or *no* movement at all." (*People v. Reed* (2000) 78 Cal.App.4th 274, 284.) However, both simple kidnapping and felony false imprisonment involve force or fear to overcome the victim's will. (See §§ 207, subd. (a), 237, subd. (a).) Thus, the only difference between the two crimes is the element of asportation necessary to prove kidnapping. (See *People v. Magana* (1991) 230 Cal.App.3d 1117, 1120-1121.) It follows that the factual question posed by the omitted instruction was whether defendant moved Monica a substantial distance. Defendant's argument appears to be that the error was prejudicial because if the jury had

7

been instructed as to felony false imprisonment, it might not have found that the movement of Monica was substantial.

The jury was thoroughly and correctly instructed with regard to the movement element of kidnapping.[5] (Cf. *People v. Reyes Martinez* (1993) 14 Cal.App.4th 1412, 1415.) The jury was also instructed on the elements of (misdemeanor) false imprisonment with CALCRIM No. 1242.[6] By convicting defendant of kidnapping, the jury necessarily found not only the force or fear element, it found that defendant moved Monica a substantial distance. "Because 'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions' [citation]," defendant suffered no prejudice due to the omission, and any error is thus harmless. (*People v. Prettyman* (1996) 14 Cal.4th 248, 276.)

## II. Section 654

The trial court ordered the terms imposed for kidnapping (count 2), and for criminal threats (count 5), to run consecutively. Defendant contends that both the kidnapping and the criminal threat involved a single course of conduct incident to just one objective, and thus section 654 required the court to stay the lesser sentence imposed

---

[5] The trial court read CALCRIM No. 1215 to the jury. With regard to asportation, the court instructed that kidnapping required proof that "using that force or fear, the defendant moved the other person a substantial distance." The court defined substantial distance as follows: "Substantial distance means more than a slight or trivial distance. In deciding whether the distance was substantial, you must consider all the circumstances relating to the movement. Thus, in addition to considering the actual distance moved, you may also consider other factors such as whether the distance the other person was moved was beyond that merely incidental to the commission of attempted murder or the lesser crime of attempted voluntary manslaughter, the crime of assault with a deadly weapon or the making of a criminal threat, whether the movement increased the risk of physical or psychological harm, increased the danger of a foreseeable escape attempt, or gave the attacker a greater opportunity to commit additional crimes or decreased the likelihood of detection."

[6] The court instructed: "To prove that defendant is guilty of the crime of false imprisonment, the People must prove that: one, the defendant intentionally restrained, detained, or confined a person; and two, the defendant's act made that person stay or go somewhere against that person's will."

in count 5. The trial court stated that consecutive sentences were appropriate because "the criminal threat [was] a separate act of violence or threat of violence."

A criminal threat is a statement, willfully made with the specific intent that it be taken as a threat to commit a crime which will result in death or great bodily injury to another person "even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety." (§ 422.) When a victim has voluntarily entered the defendant's car, the kidnapping occurs when force or fear compels her to be transported a substantial distance against her will. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1017-1018.)

"An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) Section 654 prohibits punishment for two such crimes arising from an indivisible course of conduct. (*People v. Hester* (2000) 22 Cal.4th 290, 294.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 18, disapproved on other grounds by *People v. Correa* (2012) 54 Cal.4th 331, 334, 336-338.)

"Because of the many differing circumstances wherein criminal conduct involving multiple violations may be deemed to arise out of an 'act or omission,' there can be no universal construction which directs the proper application of section 654 in every instance. [Citation.]" (*People v. Beamon* (1973) 8 Cal.3d 625, 636-637.) "If . . . a defendant had several independent criminal objectives, he may be punished for each crime committed in pursuit of each objective, even though the crimes shared common

9

acts or were parts of an otherwise indivisible course of conduct. [Citation.]" (*People v. Perry* (2007) 154 Cal.App.4th 1521, 1525, citing *People v. Harrison* (1989) 48 Cal.3d 321, 335.) Thus, whether a course of criminal conduct is divisible presents a factual issue for the trial court, and we will uphold its ruling if supported by substantial evidence. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) "[T]he trial court . . . is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence. [Citation.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) When the facts are undisputed, the applicability of section 654 to the facts is a question of law. (*People v. Perez* (1979) 23 Cal.3d 545, 552, fn. 5.)

The prosecutor's theory was that the criminal threat was made when defendant told Monica that it would be best that she tell him where she lived because she knew what he was capable of doing. Defendant contends that the verbal threat and all the subsequent threatening behavior were done for the same purpose and with a single objective, to learn where Monica and the children were living. Defendant's telephone threat made a few weeks before ("If I lost my family, I might as well just kill you if that's what you want") and his arming himself with a knife also suggest that defendant's ultimate goal was to regain his family or to kill Monica if he could not reunite.

"A person who commits separate, factually distinct, crimes, even with only one ultimate intent and objective, is more culpable than the person who commits only one crime in pursuit of the same intent and objective. A grand criminal enterprise is more deserving of censure than a less ambitious one, even if there is only one ultimate objective." (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211.)

The threat in the car suggests that defendant's first step toward his ultimate goal was to force Monica to reveal where his family lived. Defendant's subsequent behavior suggested that when the threat failed, he intended to force Monica to take him to her home. Monica testified that defendant made his threat first, and then pulled out the gun

10

after she refused to tell him where they lived and after she asked to be let out of the car. Monica's consent to be in the car ended with her request to get out. When defendant said, "You're going to take me to where you live," and hit her in the stomach and face, his apparent objective was then to force her to direct him to her home.[7] Ignoring her repeated requests to be let out of the car, defendant passed the street where she worked and continued driving, thus completing a kidnapping. After defendant's first two objectives failed, Monica escaped from the car, leaving defendant to attempt to commit his previously stated alternative of killing her.

In sum, substantial evidence supports the trial court's implied finding that the threat and the kidnapping were separate, factually distinct crimes, committed with similar but consecutive or simultaneous objectives, and thus separately punishable. (See (*People v. Latimer, supra*, 5 Cal.4th at p. 1211-1212.) The trial court did not err in imposing consecutive sentences for criminal threat and kidnapping.

## III. Assault with a deadly weapon enhancement

Appellant claims that this court should strike the deadly weapon enhancement added to count 4, assault with a deadly weapon, because use of a weapon is an element of the underlying offense. Respondent agrees that a conviction pursuant to section 245, subdivision (a)(1) may not be enhanced pursuant to section 12022, subdivision (b), and joins in the request to have it stricken. (*People v. Summersville* (1995) 34 Cal.App.4th 1062, 1070.) We agree and order the enhancement stricken.

### DISPOSITION

The one-year enhancement added under section 12022, subdivision (b)(1) on the sentence imposed as to court 4, assault with a deadly weapon, is ordered stricken. The superior court is instructed to prepare an amended abstract of judgment to reflect this

---

**7** Respondent suggests that defendant's objective was to prevent Monica from alerting the authorities. However, there was no evidence to suggest that his objective was so specific or that he had the police in mind when he prevented Monica from leaving the car.

change and to deliver a copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
HOFFSTADT


12